George P. Angelich
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
George.Angelich@afslaw.com

-and-

Justin A. Kesselman (admitted *Pro Hac Vice*)
James E. Britton (admitted *Pro Hac Vice*)
ARENTFOX SCHIFF LLP
The Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6102
Facsimile: (617) 722-4993
Justin.Kesselman@afslaw.com
James.Britton@afslaw.com

*Counsel for the Plaintiff*

**UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GREENSILL CAPITAL INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-10561 (MEW) |
| CRAIG R. JALBERT, solely in his capacity as LIQUIDATION TRUSTEE OF THE GREENSILL CAPITAL U.S. LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CUTTER MILL PARTNERS LLC, ECOBAN VENTURES LLC, KAJODA TRUST, MARC CHANNICK AS TRUSTEE OF THE KAJODA TRUST, STEVEN SHENFELD, STUART BRISTER, TARRANT EVOLUTION PARTNERS, L.P.,<br><br>Defendants. | **Adv. Proc. No. _____** |

## ADVERSARY COMPLAINT

Plaintiff Craig Jalbert (the "Liquidation Trustee" or "Plaintiff"), solely in his capacity as the liquidation trustee of the Greensill Capital U.S. Liquidation Trust (the "Liquidation Trust"), brings this Adversary Complaint (the "Complaint") against defendants (i) Cutter Mill Partners LLC, (ii) EcoBan Ventures LLC, (iii) Kajoda Trust, (iv), Marc Channick as Trustee of the Kajoda Trust, (v) Steven Shenfeld, (vi) Stuart Brister, and (vii) Tarrant eVolution Partners, L.P. (collectively, "Defendants"), to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548 and 550, and alternatively, for unjust enrichment.

### NATURE OF THE ACTION

1.      This action arises from debtor Greensill Capital, Inc.'s (the "Debtor")'s purchase of Finacity Corporation ("Finacity") from the Defendants and other parties on or about June 10, 2019 in a stock purchase transaction premised on an inflated and unjustified $82 million valuation. Finacity's fair value at the time of the transaction was no more than $15 million (and likely far less), which meant that Finacity's former shareholders received payments exceeding 500% of the value of their shares.  The Debtor paid the Defendants in this action approximately $36 million at the inflated valuation and, as such, the Debtor did not receive reasonably equivalent value in return for those payments.  The Debtor was also insolvent at the time of and immediately after each of the payments to the Defendants, or at a minimum, left with an unreasonably small capital. Accordingly, the Bankruptcy Code entitles the Liquidation Trustee to avoid and recover these payments as constructively fraudulent transfers.  Alternatively, the Defendants were unjustly enriched by the payments and the Liquidation Trustee is entitled to recover the excess value paid to them.

### JURISDICTION AND VENUE

2.      This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001(1).  It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      This action arises under title 11, and arises in, and/or is related to the Chapter 11 case of the Debtor, Case No. 21-BK-10561 (MEW) (Bankr. S.D.N.Y.) (the "Chapter 11 Case")

pending before the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  Accordingly, it falls within the jurisdiction of the United States District Court for the Southern District of New York (the "District Court") under 28 U.S.C. § 1334.  It further falls within the scope of proceedings referred to the Bankruptcy Court by the District Court's standing order of reference.

4.      The Bankruptcy Court has personal jurisdiction over each Defendant because each Defendant resides in the United States, is subject to service of process in the United States, and has sufficient minimum contacts with the United States.  Each Defendant also received the transfers at issue in connection with their sale of Finacity stock to the Debtor, which had its principal place of business in New York.  The Bankruptcy Court's exercise of jurisdiction is reasonable and would not offend traditional notions of fair play and substantial justice.  Accordingly, the Bankruptcy Court has personal jurisdiction over each of the Defendants pursuant to Fed. R. Bankr. P. 7004(f).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises out of and relates to the Chapter 11 Case which was filed and remains pending in this district.

6.      Plaintiff consents, pursuant to Fed. R. Bankr. P. 7008, to the Bankruptcy Court's entry of a final judgment.

## PARTIES

7.      Plaintiff is the duly authorized Liquidation Trustee of the Liquidation Trust.  The Liquidation Trust was formed pursuant to the Bankruptcy Court's *Amended Findings of Fact, Conclusions of Law, and Order Approving the Disclosure Statement and Confirming the Modified Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.* (the "Confirmation Order"), and is vested with the power to prosecute and settle any Claims of the Estate (as defined in the Confirmation Order) against the Defendants pursuant to 11 U.S.C. §§ 544, 548, and 550.

8.      Defendant Cutter Mill Partners LLC ("Cutter Mill") was previously a shareholder of Finacity.  Upon information and belief, Cutter Mill is headquartered in New York with an address of 60 Cutter Mill Road, Suite 303, Great Neck, NY 11021.

9.      Defendant EcoBan Ventures LLC ("EcoBan") was previously a shareholder of Finacity.  Upon information and belief, EcoBan is headquartered in Florida with an address of 4552 Sanderling Lane, Boynton Beach, FL 33436.

10.     Defendant Kajoda Trust was previously a shareholder of Finacity.  Upon information and belief, Kajoda Trust is headquartered in California with an address of 5522 Mill Creek Road, San Diego, CA 92130.  Upon information and belief, Defendant Marc Channick is the trustee of Kajoda Trust and has an address of 5522 Mill Creek Road, San Diego, CA 92130 (Channick and Kajoda Trust together, "Kajoda").

11.     Defendant Steven Shenfeld ("Shenfeld") was previously a shareholder of Finacity.  Upon information and belief, Shenfeld is a resident of New York with an address of 82 Ferry Road, Sag Harbor, NY 11963.

12.     Defendant Stuart Brister ("Brister") was previously a shareholder of Finacity.  Upon information and belief, Brister is a resident of Georgia with an address of 3918 E. Brookhaven Drive NE, Brookhaven, GA 30319.

13.     Defendant Tarrant eVolution Partners, L.P. ("Tarrant") was previously a shareholder of Finacity.  Upon information and belief, Tarrant is headquartered in Texas with an address of 301 Commerce Street, Suite 3300, Fort Worth, TX 76102.

## BACKGROUND

### A.      The Debtor

14.     The Debtor was a Delaware corporation and maintained a principal place of business in New York.

15.     The Debtor was the United States-based operation of affiliated companies founded by Alexander ("Lex") Greensill. The Debtor's direct parent company was Greensill Capital Management (UK) Limited ("GCMC"), based in the United Kingdom; and its ultimate parent

company was Greensill Capital Pty Ltd ("Greensill Parent"), based in Australia.  Greensill Parent, the Debtor, GCMC, and GCUK (as defined below), are collectively referenced as the "Greensill Group."

16.     The Greensill Group engaged in a form of supply chain finance, primarily through GCMC's sister company, Greensill Capital (UK) Limited ("GCUK").   Supply chain finance generally consists of paying a supplier's invoice early at a discount and then collecting full payment directly from the purchaser on the due date.  The Greensill Group took this a step further by financing future receivables (i.e., making payments on invoices that did not yet exist).

17.     The Debtor's employees facilitated supply-chain finance deals for the benefit of GCUK pursuant to an intercompany services agreement between the Debtor and GCUK dated June 10, 2013 (the "Services Agreement"), which entitled the Debtor to certain expense reimbursements and discretionary commissions from GCUK.

18.     The Debtor did not have other sources of revenue.  The Debtor was responsible for all of its rents, salaries, and other expenses.  Under the Services Agreement, GCUK was obligated to compensate the Debtor $24,000 per month.   At no point prior to 2019 did a loan or loan agreement exist between the Debtor and GCUK exist.   In addition, at no point prior to 2019 did the Debtor and GCUK take any efforts to collect or enforce any purported debts between the two entities.

19.     On January 1, 2019, the Debtor and GCUK entered into a Call Account Loan Agreement for the Making of Advances up to a Balance of Forty Million US Dollars (the "GCUK Revolver").  The GCUK Revolver contained the hallmarks of a loan agreement, including default provisions and the accrual of interest.  The Debtor was permitted to (and did) draw down on the GCUK Revolver for "general corporate purposes."

## B.    The Finacity Acquisition

20.     In 2019, the Debtor pursued the acquisition of Finacity, a Delaware corporation based in Connecticut.   Finacity was engaged in consulting and facilitating working capital

solutions, including securitizing accounts receivables and consumer receivables, factoring, and asset-based loans.

21. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

22.    Notwithstanding Finacity's financial condition, Finacity's founder and CEO, Adrian Katz ("Katz"), ██████████████████████████████████

██████████████████████████████████████

23. ████████████████████████████████████████

██████████████████████████████████    The Debtor did not negotiate meaningful reductions to the purchase price in response to these concerns.

24.    On April 3, 2019, Lex sent ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

25.    Lex  proposed ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

26.    Finacity was not worth █████████. Indeed, ██████████████

████████████████████████    The Debtor's internal diligence was that

Finacity's standalone value ranged between ██████████████████ based on a discounted cash flow analysis.

27.    There was no factual basis to attribute any material value to cross-selling synergies in determining Finacity's value to the Debtor.  No member of the Greensill Group spoke to any of Finacity's clients. ██████████████████████████

28.    Upon information and belief, █████████████████████████████ ████████████████████████

29.    Upon information and belief, █████████████████████████ ████████████████████

30.    Upon information and belief, the Debtor's acquisition of Finacity was unlikely to result in a material net revenue uplift for Finacity or the Debtor.

31.    In addition, ██████████████████████ ████████████████████████████████ █████████████████████

32.    █████████████████████████████ ████████████████████████████████ ████████████████████████████████

33.    █████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████

34.    █████████████████████████████ ████████████████████████████████ ████████████

35.    No independent third party provided a valuation opinion or analysis regarding the proposed transaction with Finacity.

36.    The Finacity acquisition closed on June 10, 2019, and the Debtor entered into a Stock Purchase Agreement to acquire 100% of the shares of Finacity for consideration of approximately $82,156,000 (without considering millions of dollars in other closing payments made by or on behalf of the Debtor) (the "Finacity Acquisition"). The consideration consisted of (i) $55,636,000 to be paid to Finacity's non-founding shareholders in two installments—one at closing, and one on anniversary of the closing; and (ii) $26,520,000 to be paid to Katz and related parties in five annual installments.

37.    The Stock Purchase Agreement contained a "Governing Law" provision stating that "all claims or causes of action that are based on, arise out of, or relate to this Agreement, will be governed by and construed in accordance with the Laws of the State of Delaware without regard to its conflicts of law rules and any other Law that would cause the application of the Laws (including the statute of limitations) of any jurisdiction other than the State of Delaware."

38.    Upon information and belief, the fair market value of Finacity was no more than $15,000,000 (and likely far less) at the time of the transaction.

39.    ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

40.    ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████

41. 

, in fact, the discount should have no more than 5% (and likely less).

42.

43.

44.     Upon information and belief, taking into account the aforementioned factors and adjustments, Finacity's fair value upon the Debtor's acquisition was no more than $15,000,000 and likely substantially less.

### C.     The Avoidable Transfers

45.     In June 2019, the Debtor borrowed approximately $27,034,911 under the GCUK Revolver and used those funds to make the first round of payments required to close the Finacity Acquisition.  The Debtor caused approximately $26.5 million of its borrowed funds to be paid and transferred to Finacity's non-founder shareholders, and another $6 million to be paid to other parties.

46.     In June 2020, the Debtor borrowed approximately $32,790,105 under the GCUK Revolver and used those funds to make the second round of payments required under the Stock Purchase Agreement.  The Debtor caused approximately $27.8 million of its borrowed funds to be paid and transferred to Finacity's non-founder shareholders, as well as $4.9 million to Katz.

47.     The Debtor caused (i) $702,381.20 to be paid to Defendant Tarrant on or about June 10, 2019, and (ii) $719,030.39 to be paid to Defendant Tarrant on or about June 10, 2020, for a total of $1,421,411.59.  The funds paid to Tarrant were property of the Debtor.  The Debtor did not receive reasonably equivalent value in return for its transfers to Tarrant.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

48.     The Debtor caused (i) $1,465,111.69 to be paid to Defendant Brister on or about June 10, 2019, and (ii) $1,499,840.60 to be paid to Defendant Brister on or about June 10, 2020, for a total of $2,964,952.29.  The funds paid to Brister were property of the Debtor.  The Debtor did not receive reasonably equivalent value in return for its transfers to Brister.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

49.     The Debtor caused (i) $3,662,842.71 to be paid to Defendant Shenfeld on or about June 10, 2019, and (ii) $3,749,666.48 to be paid to Defendant Shenfeld on or about June 10, 2020, for a total of $7,412,509.19, in exchange for Shenfeld's 173,828 shares in Finacity.  The funds paid to Shenfeld were property of the Debtor.  The Debtor did not receive reasonably equivalent value in return for its transfers to Shenfeld.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

50.     The Debtor caused (i) $2,702,719.63 to be paid to Defendant Kajoda on or about June 10, 2019, and (ii) $2,766,055.31 to be paid to Defendant Kajoda on or about June 10, 2020, for a total of $5,468,774.94, in exchange for Kajoda's 126,803 shares in Finacity.  The funds paid to Kajoda were property of the Debtor.  The Debtor did not receive reasonably equivalent value in return for its transfers to Kajoda.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

51.     The Debtor caused (i) $5,269,907.68 to be paid to Defendant EcoBan on or about June 10, 2019, and (ii) $5,386,072.96 to be paid to Defendant EcoBan on or about June 10, 2020, for a total of $10,655,908.64, in exchange for EcoBan's 232,572 shares in Finacity.  The funds paid to EcoBan were property of the Debtor.  The Debtor did not receive reasonably equivalent value in return for its transfers to EcoBan.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

52.     The Debtor caused (i) $3,662,842.71 to be paid to Defendant Cutter Mill on or about June 10, 2019, and (ii) $3,749,666.48 to be paid to Defendant Cutter Mill on or about June 10, 2020, for a total of $7,412,509.19, in exchange for Cutter Mill's 173,828 shares in Finacity. The funds paid to Cutter Mill were property of the Debtor.  The Debtor did not receive reasonably

equivalent value in return for its transfers to Cutter Mill.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

53.    The total value of the transfers of the Debtor's property made to the Defendants in June 2019 (collectively, the "2019 Transfers" and each a "2019 Transfer") was $17,465,805.62. Upon information belief, the total value (including the Defendants' shares in Finacity) received by the Debtor in return for the 2019 Transfers had a fair value of less than $3,500,000.

54.    The total value of the transfers of the Debtor's property made to the Defendants in June 2020 (collectively, the "2020 Transfers" and each a "2020 Transfer"; the 2019 Transfers and the 2020 Transfers are referred to collectively as the "Avoidable Transfers") was $17,870,332.22. Upon information belief, the total value (including the Defendants' shares in Finacity) received by the Debtor in return for the 2020 Transfers had a fair value of less than $3,750,000.

55.    A chart showing the dates, values, and recipients of the Avoidable Transfers is attached hereto as **Exhibit A**.

### D.    The Debtor's Insolvency

56.    At all relevant times, the Debtor was insolvent.

57.    Following the Finacity Acquisition, the Debtor carried Finacity on its balance sheet at a book value of approximately $80,000,000.  When the value of Finacity is adjusted to its corrected value of $15,000,000 or less, the Debtor was insolvent as of June 2019 and at all points thereafter.

58.    The Debtor was already insolvent prior to the Finacity Acquisition as a result of draws on the GCUK Revolver and other liabilities.  The Debtor had no material assets and no reliable revenue stream other than limited payments from GCUK under the Services Agreement.

59.    As of December 31, 2018, the fair value of the Debtor's assets was no more than $1,355,421 and the Debtor's liabilities were approximately $6,017,339.  Accordingly, as of December 31, 2018, the Debtor was insolvent by approximately $4,661,918.

60.    As of June 10, 2019, when the Defendants received the 2019 Transfers, the Debtor's financial condition and insolvency had worsened because of, among other things, the

Debtor's draws on the GCUK Revolver to fund operations. The Debtor drew $27,034,911 on the GCUK Revolver to fund the 2019 Transfers (as well as payments to other shareholders), but received stock in Finacity with a value of less than $15,000,000. Immediately following the transaction, Finacity was the Debtor's only material asset, whereas the Debtor owed more than $30 million to GCUK, more than $30 million to Finacity's former shareholders, and other liabilities, which in their totality, far exceeded the value of the Debtor's assets. The Debtor was insolvent at the time of and immediately after the 2019 Transfers.

61.    As of December 31, 2019, the fair value of the Debtor's assets was no more than $20,024,983, and the Debtor's liabilities were approximately $77,687,600. Accordingly, as of December 31, 2019, the Debtor was insolvent by more than $57,000,000.

62.    As of June 10, 2020, when the Defendants received the 2020 Transfers, the Debtor was insolvent. The Debtor drew $32,790,105 on the GCUK Revolver to fund the 2020 Transfers (as well as payments to other shareholders), but received no further value in return. Immediately following the payments, Finacity remained the Debtor's only material asset, whereas the Debtor owed more than $35 million to GCUK, more than $20 million in future earnouts to Katz, and other liabilities, which in their totality, far exceeded the value of the Debtor's assets.

63.    As of December 31, 2020, the fair value of the Debtor's assets was no more than $21,511,882, and the Debtor's liabilities were approximately $70,639,516. Accordingly, as of December 31, 2020, the Debtor was insolvent by more than $49,000,000.

64.    The Avoidable Transfers also left the Debtor with unreasonably small capital to operate its business and pay for the transactions being entered. The Debtor's acquisition of Finacity and the Avoidable Transfers made in connection therewith left the Debtor overleveraged with no ability to delever. Finacity was the Debtor's only material asset, but its fair market value was insufficient to cover the debt incurred to acquire it (and, moreover, the terms of the acquisition put Katz in a blocking position with respect to a sale). The Debtor had no reliable source of revenue other than the limited payments under the Services Agreement, which were insufficient to pay all of the Debtor's operating expenses, the outstanding amounts under the GCUK Revolver,

and the outstanding payments in connection with the Finacity acquisition. For these reasons, the Avoidable Transfers left the Debtor with insufficient and unreasonably small capital.

**E.      The Chapter 11 Case**

65.      The Debtor filed a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 25, 2021 (the "Petition Date") in the Bankruptcy Court.

66.      During the bankruptcy case, GCUK enforced its claims as a creditor of the Debtor under the GCUK Revolver and drawn letter of credit.

67.      The Debtor retained an investment banker, GLC Advisors & Co., to market the Debtor's interest in Finacity. GLC contacted over 200 parties regarding the potential acquisition of Finacity from the Debtor free and clear of all liens and encumbrances pursuant to section 363 of the Bankruptcy Code.

68.      At the conclusion of the sale process, the Bankruptcy Court approved the sale of the Debtor's interest in Finacity to White Oak Global Advisors, LLC for cash consideration of $7 million (and other terms, including the resolution of Katz's claims and compensation) by Order dated August 18, 2021 [ECF No. 236]. The sale closed on September 21, 2021 [ECF No. 273].

69.      The Debtor filed its *Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [ECF No. 307] (the "Plan") on October 26, 2021, which was confirmed as modified by the Confirmation Order.

70.      Pursuant to the Plan and Confirmation Order, GCUK's (a) claim for amounts owed under the GCUK Revolver was allowed in the amount of $52,840,506.80 and (b) claim for amounts owed in relation to a letter of credit was allowed in the amount of $526,000.

71.      Pursuant to the Plan and Confirmation Order, the Liquidation Trust is the successor in interest to the Debtor as provided therein, including with respect to the right to bring, prosecute, and settle Retained Causes of Action (as defined in the Plan), which Retained Causes of Action include claims under Chapter 5 of the Bankruptcy Code.

**FIRST CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Tarrant – 11 U.S.C. § 548)

72.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

73.    The Debtor caused $702,381.20 of its funds to be transferred to Tarrant on or around June 10, 2019, which date is within two years prior to the Petition Date.

74.    The Debtor caused $719,030.39 of its funds to be transferred to Tarrant on or around June 10, 2020, which date is within two years prior to the Petition Date.

75.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Tarrant.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

76.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

77.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

78.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

79.    Accordingly, Plaintiff is entitled to avoid the transfer of $1,421,411.59 to Tarrant pursuant to section 548 of the Bankruptcy Code.

**SECOND CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Tarrant – 11 U.S.C. § 544)

80.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

81.    The Debtor caused $702,381.20 of its funds to be transferred to Tarrant on or around June 10, 2019, which date is within four years prior to the Petition Date.

82.     The Debtor caused $719,030.39 of its funds to be transferred to Tarrant on or around June 10, 2020, which date is within four years prior to the Petition Date.

83.     The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Tarrant.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

84.     The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

85.     At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

86.     At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

87.     In addition, immediately before and at the time of the transfers to Tarrant, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law.

88.     There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Tarrant, including but not limited to Caitlin Gallagher.  Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and/or other applicable law.

89.     Accordingly, Plaintiff is entitled to avoid the transfer of $1,421,411.59 to Tarrant pursuant to section 544 of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
(Recovery of Fraudulent Transfers from Tarrant – 11 U.S.C. § 550)

90.     Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

91.     The Plaintiff is entitled to avoidance of transfers to Tarrant totaling $1,421,411.59 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

92.     Tarrant is the initial transferee of these amounts.

93.     The Plaintiff is entitled to recover these amounts or their value from Tarrant.

94.     The value of these amounts is $1,421,411.59.

95.     Accordingly, Plaintiff is entitled to recover $1,421,411.59 from Tarrant pursuant to section 550 of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
(Unjust Enrichment – Tarrant)

96.     Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

97.     Tarrant was enriched by the amount of $702,381.20 in connection with the 2019 Transfer on or around June 10, 2019.

98.     Tarrant was enriched by the amount of $719,030.39 in connection with the 2020 Transfer on or around June 10, 2020.

99.     The Debtor was impoverished in the amount of $702,381.20 in connection with the 2019 Transfer on or around June 10, 2019.

100.     The Debtor was impoverished in the amount of $719,030.39 in connection with the 2020 Transfer on or around June 10, 2020.

101.     Tarrant's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Tarrant received these amounts from the Debtor in exchange for Tarrant's shares in Finacity.

102.    Tarrant's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

103.    Tarrant lacks a rational justification for retaining the excessive amounts paid to it by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

104.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

105.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

106.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Tarrant to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

## FIFTH CAUSE OF ACTION
(Avoidance of Fraudulent Transfers to Brister – 11 U.S.C. § 548)

107.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

108.    The Debtor caused $1,465,111.69 of its funds to be transferred to Brister on or around June 10, 2019, which date is within two years prior to the Petition Date.

109.    The Debtor caused $1,499,840.60 of its funds to be transferred to Brister on or around June 10, 2020, which date is within two years prior to the Petition Date.

110.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Brister.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

111.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

112.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

113.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

114.    Accordingly, Plaintiff is entitled to avoid the transfer of $2,964,952.29 to Brister pursuant to section 548 of the Bankruptcy Code.

**SIXTH CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Brister – 11 U.S.C. § 544)

115.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

116.    The Debtor caused $1,465,111.69 of its funds to be transferred to Brister on or around June 10, 2019, which date is within four years prior to the Petition Date.

117.    The Debtor caused $1,499,840.60 of its funds to be transferred to Brister on or around June 10, 2020, which date is within four years prior to the Petition Date.

118.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Brister.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

119.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

120.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

121.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not

limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

122.     In addition, immediately before and at the time of the transfers to Brister, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law.

123.     There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Brister, including but not limited to Caitlin Gallagher. Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2), and/or other applicable law.

124.     Accordingly, Plaintiff is entitled to avoid the transfer of $2,964,952.29 to Brister pursuant to section 544 of the Bankruptcy Code.

**SEVENTH CAUSE OF ACTION**
(Recovery of Fraudulent Transfers from Brister – 11 U.S.C. § 550)

125.     Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

126.     The Plaintiff is entitled to avoidance of transfers to Brister totaling $2,964,952.29 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

127.     Brister is the initial transferee of these amounts.

128.     The Plaintiff is entitled to recover these amounts or their value from Brister.

129.     The value of these amounts is $2,964,952.29.

130.     Accordingly, Plaintiff is entitled to recover $2,964,952.29 from Brister pursuant to section 550 of the Bankruptcy Code.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment – Brister)

131.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

132.    Brister was enriched by the amount of $1,465,111.69 in connection with the 2019 Transfer on or around June 10, 2019.

133.    Brister was enriched by the amount of $1,499,840.60 in connection with the 2020 Transfer on or around June 10, 2020.

134.    The Debtor was impoverished in the amount of $1,465,111.69 in connection with the 2019 Transfer on or around June 10, 2019.

135.    The Debtor was impoverished in the amount of $1,499,840.60 in connection with the 2020 Transfer on or around June 10, 2020.

136.    Brister's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Brister received these amounts from the Debtor in exchange for Brister's shares in Finacity.

137.    Brister's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

138.    Brister lacks a rational justification for retaining the excessive amounts paid to him by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

139.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

140.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

141.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Brister to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

**NINTH CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Shenfeld – 11 U.S.C. § 548)

142.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

143.    The Debtor caused $3,662,842.71 of its funds to be transferred to Shenfeld on or around June 10, 2019, which date is within two years prior to the Petition Date.

144.    The Debtor caused $3,749,666.48 of its funds to be transferred to Shenfeld on or around June 10, 2020, which date is within two years prior to the Petition Date.

145.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Shenfeld.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

146.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

147.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

148.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

149.    Accordingly, Plaintiff is entitled to avoid the transfer of $7,412,509.19 to Shenfeld pursuant to section 548 of the Bankruptcy Code.

**TENTH CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Shenfeld – 11 U.S.C. § 544)

150.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

151.    The Debtor caused $3,662,842.71 of its funds to be transferred to Shenfeld on or around June 10, 2019, which date is within four years prior to the Petition Date.

152.    The Debtor caused $3,749,666.48 of its funds to be transferred to Shenfeld on or around June 10, 2020, which date is within four years prior to the Petition Date.

153.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Shenfeld.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

154.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

155.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

156.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

157.    In addition, immediately before and at the time of the transfers to Shenfeld, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law.

158.    There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Shenfeld, including but not limited to Caitlin Gallagher.  Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and/or other applicable law.

159.    Accordingly, Plaintiff is entitled to avoid the transfer of $7,412,509.19 to Shenfeld pursuant to section 544 of the Bankruptcy Code.

## ELEVENTH CAUSE OF ACTION
### (Recovery of Fraudulent Transfers from Shenfeld – 11 U.S.C. § 550)

160.     Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

161.     The Plaintiff is entitled to avoidance of transfers to Shenfeld totaling $7,412,509.19 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

162.     Shenfeld is the initial transferee of these amounts.

163.     The Plaintiff is entitled to recover these amounts or their value from Shenfeld.

164.     The value of these amounts is $7,412,509.19.

165.     Accordingly, Plaintiff is entitled to recover $7,412,509.19 from Shenfeld pursuant to section 550 of the Bankruptcy Code.

## TWELFTH CAUSE OF ACTION
### (Unjust Enrichment – Shenfeld)

166.     Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

167.     Shenfeld was enriched by the amount of $3,662,842.71 in connection with the 2019 Transfer on or around June 10, 2019.

168.     Shenfeld was enriched by the amount of $3,749,666.48 in connection with the 2020 Transfer on or around June 10, 2020.

169.     The Debtor was impoverished in the amount of $3,662,842.71 in connection with the 2019 Transfer on or around June 10, 2019.

170.     The Debtor was impoverished in the amount of $3,749,666.48 in connection with the 2020 Transfer on or around June 10, 2020.

171.     Shenfeld's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Shenfeld received these amounts from the Debtor in exchange for Shenfeld's shares in Finacity.

172.    Shenfeld's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

173.    Shenfeld lacks a rational justification for retaining the excessive amounts paid to him by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

174.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

175.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

176.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Shenfeld to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

**THIRTEENTH CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Kajoda – 11 U.S.C. § 548)

177.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

178.    The Debtor caused $2,702,719.63 of its funds to be transferred to Kajoda on or around June 10, 2019, which date is within two years prior to the Petition Date.

179.    The Debtor caused $2,766,055.31 of its funds to be transferred to Kajoda on or around June 10, 2020, which date is within two years prior to the Petition Date.

180.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Kajoda.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

181.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

182.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

183.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

184.    Accordingly, Plaintiff is entitled to avoid the transfer of $5,468,774.94 to Kajoda pursuant to section 548 of the Bankruptcy Code.

**FOURTEENTH CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Kajoda – 11 U.S.C. § 544)

185.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

186.    The Debtor caused $2,702,719.63 of its funds to be transferred to Kajoda on or around June 10, 2019, which date is within four years prior to the Petition Date.

187.    The Debtor caused $2,766,055.31 of its funds to be transferred to Kajoda on or around June 10, 2020, which date is within four years prior to the Petition Date.

188.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Kajoda.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

189.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

190.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

191.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not

limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

192.    In addition, immediately before and at the time of the transfers to Kajoda, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law.

193.    There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Kajoda, including but not limited to Caitlin Gallagher. Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and/or other applicable law.

194.    Accordingly, Plaintiff is entitled to avoid the transfer of $5,468,774.94 to Kajoda pursuant to section 544 of the Bankruptcy Code.

## FIFTEENTH CAUSE OF ACTION
### (Recovery of Fraudulent Transfers from Kajoda – 11 U.S.C. § 550)

195.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

196.    The Plaintiff is entitled to avoidance of transfers to Kajoda totaling $5,468,774.94 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

197.    Kajoda is the initial transferee of these amounts.

198.    The Plaintiff is entitled to recover these amounts or their value from Kajoda.

199.    The value of these amounts is $5,468,774.94.

200.    Accordingly, Plaintiff is entitled to recover $5,468,774.94 from Kajoda pursuant to section 550 of the Bankruptcy Code.

## SIXTEENTH CAUSE OF ACTION
### (Unjust Enrichment – Kajoda)

201.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

202.    Kajoda was enriched by the amount of $2,702,719.63 in connection with the 2019 Transfer on or around June 10, 2019.

203.    Kajoda was enriched by the amount of $2,766,055.31 in connection with the 2020 Transfer on or around June 10, 2020.

204.    The Debtor was impoverished in the amount of $2,702,719.63 in connection with the 2019 Transfer on or around June 10, 2019.

205.    The Debtor was impoverished in the amount of $2,766,055.31 in connection with the 2020 Transfer on or around June 10, 2020.

206.    Kajoda's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Kajoda received these amounts from the Debtor in exchange for Tarrant's shares in Finacity.

207.    Kajoda's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

208.    Kajoda lacks a rational justification for retaining the excessive amounts paid to it by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

209.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

210.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

211.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Kajoda to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

## SEVENTEENTH CAUSE OF ACTION
(Avoidance of Fraudulent Transfers to EcoBan – 11 U.S.C. § 548)

212.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

213.    The Debtor caused $5,269,907.68 of its funds to be transferred to EcoBan on or around June 10, 2019, which date is within two years prior to the Petition Date.

214.    The Debtor caused $5,386,072.96 of its funds to be transferred to EcoBan on or around June 10, 2020, which date is within two years prior to the Petition Date.

215.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to EcoBan.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

216.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

217.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

218.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

219.    Accordingly, Plaintiff is entitled to avoid the transfer of $10,655,908.64 to EcoBan pursuant to sections 548 of the Bankruptcy Code.

## EIGHTEENTH CAUSE OF ACTION
(Avoidance of Fraudulent Transfers to EcoBan – 11 U.S.C. § 544)

220.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

221.    The Debtor caused $5,269,907.68 of its funds to be transferred to EcoBan on or around June 10, 2019, which date is within four years prior to the Petition Date.

222.    The Debtor caused $5,386,072.96 of its funds to be transferred to EcoBan on or around June 10, 2020, which date is within four years prior to the Petition Date.

223.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to EcoBan.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

224.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

225.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

226.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

227.    In addition, immediately before and at the time of the transfers to Ecoban, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law.

228.    There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Ecoban, including but not limited to Caitlin Gallagher. Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and/or other applicable law.

229.    Accordingly, Plaintiff is entitled to avoid the transfer of $10,655,908.64 to EcoBan pursuant to section 544 of the Bankruptcy Code.

## NINETEENTH CAUSE OF ACTION
(Recovery of Fraudulent Transfers from Ecoban – 11 U.S.C. § 550)

230.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

231.    The Plaintiff is entitled to avoidance of transfers to EcoBan totaling $10,655,908.64 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

232.    EcoBan is the initial transferee of these amounts.

233.    The Plaintiff is entitled to recover these amounts or their value from EcoBan.

234.    The value of these amounts is $10,655,908.64.

235.    Accordingly, Plaintiff is entitled to recover $10,655,908.64 from EcoBan pursuant to section 550 of the Bankruptcy Code.

## TWENTIETH CAUSE OF ACTION
(Unjust Enrichment – Ecoban)

236.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

237.    Ecoban was enriched by the amount of $5,269,907.68 in connection with the 2019 Transfer on or around June 10, 2019.

238.    Ecoban was enriched by the amount of $5,386,072.96 in connection with the 2020 Transfer on or around June 10, 2020.

239.    The Debtor was impoverished in the amount of $5,269,907.68 in connection with the 2019 Transfer on or around June 10, 2019.

240.    The Debtor was impoverished in the amount of $5,386,072.96 in connection with the 2020 Transfer on or around June 10, 2020.

241.    Ecoban's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Ecoban received these amounts from the Debtor in exchange for Ecoban's shares in Finacity.

242.    Ecoban's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

243.    Ecoban lacks a rational justification for retaining the excessive amounts paid to it by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

244.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

245.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

246.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Ecoban to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

**TWENTY-FIRST CAUSE OF ACTION**
(Avoidance of Fraudulent Transfers to Cutter Mill – 11 U.S.C. § 548)

247.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

248.    The Debtor caused $3,662,842.71 of its funds to be transferred to Cutter Mill on or around June 10, 2019, which date is within two years prior to the Petition Date.

249.    The Debtor caused $3,749,666.48 of its funds to be transferred to Cutter Mill on or around June 10, 2020, which date is within two years prior to the Petition Date.

250.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Cutter Mill.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

251.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

252.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

253.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

254.    Accordingly, Plaintiff is entitled to avoid the transfer of $7,412,509.19 to Cutter Mill pursuant to sections 548 of the Bankruptcy Code.

### TWENTY-SECOND CAUSE OF ACTION
(Avoidance of Fraudulent Transfers to Cutter Mill – 11 U.S.C. § 544)

255.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

256.    The Debtor caused $3,662,842.71 of its funds to be transferred to Cutter Mill on or around June 10, 2019, which date is within four years prior to the Petition Date.

257.    The Debtor caused $3,749,666.48 of its funds to be transferred to Cutter Mill on or around June 10, 2020, which date is within four years prior to the Petition Date.

258.    The Debtor did not receive reasonably equivalent value in return for these Avoidable Transfers to Cutter Mill.  Rather, the Debtor received shares in a company at a valuation that was inflated and overstated by more than 500%.

259.    The Debtor was insolvent immediately before, at the time of, and immediately after the Avoidable Transfers.

260.    At the time of and immediately after the Avoidable Transfers, the Debtor was left with an unreasonably small capital for the business and transactions in which it was engaged or about to be engaged.

261.    At the time of and immediately after the Avoidable Transfers, the Debtor intended to incur or believed it would incur debts that were beyond its ability to pay, including but not

limited to the balance of the GCUK Revolver and liabilities in connection with the Finacity acquisition.

262.    In addition, immediately before and at the time of the transfers to Cutter Mill, and at all times thereafter, GCUK was a creditor of the Debtor and held a valid unsecured claim against the Debtor in excess of the amount of such transfers.  Accordingly, GCUK is a creditor who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and 1305(a), and/or other applicable law..

263.    There exist multiple other creditors with valid unsecured claims against the Debtor, whose claims accrued after the transfers to Cutter Mill, including but not limited to Caitlin Gallagher.  Accordingly, Gallagher is one of multiple creditors who could have avoided the transfers pursuant to 6 Del. Code §§ 1304(a)(2) and/or other applicable law..

264.    Accordingly, Plaintiff is entitled to avoid the transfer of $7,412,509.19 to Cutter Mill pursuant to sections 544 of the Bankruptcy Code.

**TWENTY-THIRD CAUSE OF ACTION**
(Recovery of Fraudulent Transfers from Cutter Mill – 11 U.S.C. § 550)

265.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

266.    The Plaintiff is entitled to avoidance of transfers to Cutter Mill totaling $7,412,509.19 as set forth above pursuant to sections 544 and 548 of the Bankruptcy Code.

267.    Cutter Mill is the initial transferee of these amounts.

268.    The Plaintiff is entitled to recover these amounts or their value from Cutter Mill.

269.    The value of these amounts is $7,412,509.19.

270.    Accordingly, Plaintiff is entitled to recover $7,412,509.19 from Cutter Mill pursuant to section 550 of the Bankruptcy Code.

## TWENTY-FOURTH CAUSE OF ACTION
### (Unjust Enrichment – Cutter Mill)

271.    Plaintiff repeats and realleges all of the allegations of this Complaint as if set forth herein.

272.    Cutter Mill was enriched by the amount of $3,662,842.71 in connection with the 2019 Transfer on or around June 10, 2019.

273.    Cutter Mill was enriched by the amount of $3,749,666.48 in connection with the 2020 Transfer on or around June 10, 2020.

274.    The Debtor was impoverished in the amount of $3,662,842.71 in connection with the 2019 Transfer on or around June 10, 2019.

275.    The Debtor was impoverished in the amount of $3,749,666.48 in connection with the 2020 Transfer on or around June 10, 2020.

276.    Cutter Mill's enrichment in connection with the 2019 and 2020 Transfers was directly related to the Debtor's impoverishment in connection with the 2019 and 2020 Transfers, as Cutter Mill received these amounts from the Debtor in exchange for Cutter Mill's shares in Finacity.

277.    Cutter Mill's enrichment at the expense of the Debtor was unjustifiable because, among other things, the Debtor was left insolvent and holding stock with a value at least 500% less than the price paid.

278.    Cutter Mill lacks a rational justification for retaining the excessive amounts paid to it by the Debtor in connection with the 2019 and 2020 Transfers, which amounts were overvalued by more than 500% the consideration received by the Debtor in return.

279.    Plaintiff is the successor-in-interest to the Debtor under the Plan and Confirmation Order.

280.    To the extent any amount of the 2019 and 2020 Transfers are not recoverable as fraudulent transfers, Plaintiff lacks an adequate remedy at law for recovery of such amounts.

281.    The Court should establish a constructive trust on the 2019 and 2020 Transfers and order Cutter Mill to remit to the Plaintiff the amount of such transfers in excess of the value of the Finacity shares transferred to the Debtor.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

(i) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant Tarrant and ordering Tarrant to pay no less than $1,421,411.59 to the Plaintiff;

(ii) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant Brister and ordering Brister to pay no less than $2,964,952.29 to the Plaintiff;

(iii) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant Shenfeld and ordering Shenfeld to pay no less than $7,412,509.19 to the Plaintiff;

(iv) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant Kajoda and ordering Kajoda to pay no less than $5,468,774.94 to the Plaintiff;

(v) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant EcoBan and ordering Ecoban to pay no less than $10,655,908.64 to the Plaintiff;

(vi) in favor of the Plaintiff avoiding the 2019 and 2020 Transfers to Defendant Cutter Mill and ordering Cutter Mill to pay no less than $7,412,509.19 to the Plaintiff;

(vii); in the alternative to the extent any Avoidable Transfer is not avoidable or recoverable, in favor of the Plaintiff and against the Defendants in the amount of their unjust enrichment to be proven at trial;

(viii) awarding Plaintiff his costs, interest, and attorneys' fees to the fullest extent permitted by applicable law; and

(ix) for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 23, 2023
      New York, New York

                  **ARENTFOX SCHIFF LLP**

                  */s/George P. Angelich*
                  George P. Angelich
                  ArentFox Schiff LLP
                  1301 Avenue of the Americas, 42nd Floor
                  New York, NY 10019
                  Telephone: (212) 484-3900
                  Facsimile: (212) 484-3990
                  George.Angelich@afslaw.com

                  and

                  Justin A. Kesselman (admitted *Pro Hac Vice*)
                  James E. Britton (admitted *Pro Hac Vice*)
                  ArentFox Schiff LLP
                  The Prudential Tower
                  800 Boylston Street, 32nd Floor
                  Boston, MA 02199
                  Telephone: (617) 973-6102
                  Facsimile: (617) 722-4993
                  Justin.Kesselman@afslaw.com
                  James.Britton@afslaw.com

                  *Counsel for the Plaintiff*